FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ DEC 07 2018 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
NATALIYA DOBRER,

            Appellant,

- against -

PENNYMAC CORP.,

            Appellee.

------------------------------------------------------------ X

**MEMORANDUM
DECISION AND ORDER**
18-CV-3174 (AMD)

**ANN M. DONNELLY,** United States District Judge:

On May 25, 2018, Nataliya Dobrer appealed Chief Bankruptcy Judge Carla E. Craig's May 11, 2018 order in bankruptcy action, No. 17-45560, terminating loss mitigation proceedings as moot. Judge Craig held that participation in the loss mitigation program would be pointless, since the property at issue had already been sold at foreclosure. The appellant claims that there should have been an automatic stay when she filed her voluntary Chapter 13 petition in October 2017, and that the property should not have been sold. For the following reasons, I conclude that the appeal is moot, and dismiss the case for lack of subject matter jurisdiction.

## BACKGROUND

PennyMac Corp. held a mortgage on the appellant's condominium located at 3543 Shore Parkway in Brooklyn. (A013.)[1] During 2017, three bankruptcy filings were made where she was the named debtor. The first was an involuntary Chapter 7 petition, No. 17-40215, filed by a petitioning creditor, Eran Matalon,[2] on January 19, 2017. (A026; A032.) Judge Craig dismissed the petition. (A040–41; *see* A037.)

---

[1] "A__" cites refer to the appellant's appendix. (ECF No. 7.)

[2] The appellant claims that she did not know Mr. Matalon, who appears to be a real estate agent. (*See* A076–77.)

1

The second petition was filed on June 8, 2017, when the appellant filed a voluntary Chapter 13 petition, No. 17-42995, which was automatically dismissed. (A026; A044–47.)

The appellant filed a third petition—another voluntary Chapter 13 petition, No. 17-45560—was filed on October 26, 2017,[3] but did not request that the foreclosure proceedings be stayed. Her condominium was sold on November 2, 2017.[4] (A056.) Nevertheless, on December 18, 2017, the appellant requested that the bankruptcy court order the creditor–appellee PennyMac Corp. to participate with her in the loss mitigation program to attempt to resolve the foreclosure. (A003.) She made a second request on February 20, 2018. (A006.) The appellee did not oppose either request, and on March 22, 2018, Judge Craig ordered the parties to participate in the loss mitigation program. (A013–14.)

On April 18, 2018, the appellee moved, pursuant to Rule 60(b), to vacate the loss mitigation proceedings order or in the alternative, to terminate proceedings. (A007; A025–30.) The appellee explained that the appellant's October 2017 petition was her third bankruptcy filing within the past year, and therefore, under 11 U.S.C. § 362(c)(4)(A), the automatic stay that ordinarily goes into effect upon the filing of a bankruptcy petition never went into place. (A026–27.) *See* 11 U.S.C. § 362(c)(4)(A)(i) ("[I]f a single or joint case is filed by or against a debtor . . . , and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed, . . . the [automatic] stay . . . shall not go into effect upon the filing of the later case."). When the appellant did not move for a stay under 11 U.S.C. § 362(c)(4)(B), the home was sold at a foreclosure auction on November 2, 2017. (A027; A056.) Therefore, the appellee

---

[3] In January 2018, the appellant converted the case from a Chapter 13 to a Chapter 7 filing. (A005.)

[4] The deed transferring the property to the new owner was recorded in February 2018. (A027; A050–57.)

2

argued that loss mitigation was pointless because "there [was] no Note and Mortgage to modify." (A028–30.)

Judge Craig heard oral argument on May 3, 2018. (A059.) The appellant claimed, without citing any authority, that the January 2017 petition should not have "counted" under § 362(c)(4)(A)(i) because it was involuntary, and thus, the automatic stay should have gone into effect after the third petition. (A007; A065; A070–71.) Judge Craig rejected this argument, pointing out that § 362(c)(4)(A) was meant to "prevent the automatic stay from being invoked multiple times," and "putting a creditor in a position where they have to seek preclusive relief." (A076–78.) Because the automatic stay took effect when the first two petitions were filed, the automatic stay did not attach when the appellant filed her third petition in October 2017. (A075–78.)

The appellant also claimed that she was denied due process because she was never served with the involuntary petition. (A071–72.) As a result, she claims that the sale of her property never should have occurred because the automatic stay should have attached upon the filing of what she thought was her second, not third, bankruptcy petition. (A073–75.) Judge Craig rejected this argument, too, because the appellant had "actual notice of the pendency of [the involuntary proceedings], whether or not the petitioning creditor served her, because she was served . . . with the Court's order to show cause." (A074.) Therefore, the appellant knew that the October 2017 filing was her third bankruptcy petition, and could have prevented the foreclosure by moving under § 362(c)(4)(B) for a stay. (*Id.*)

Judge Craig granted the appellee's motion to terminate loss mitigation, because "the automatic stay did not take effect in the instant bankruptcy case pursuant to 11 U.S.C. §

3

362(c)(4)(A)(i) and the property was sold at a foreclosure sale held on November 2, 2017."[5] (A087.) The appellant timely appealed Judge Craig's order. (A009; ECF No. 1.)

The appellant makes essentially the same arguments she made to Judge Craig. Arguing that 11 U.S.C. § 362(c)(4)(A)(i) does not apply to involuntary bankruptcy petitions, she claims that she was denied due process because she was not served with the first petition.[6] (ECF No. 6 at 9–20.)[7] The appellee responds that the bankruptcy court correctly interpreted 11 U.S.C. § 362(c), and that the appellant could have moved for a stay, but did not. (ECF No. 8.)

## DISCUSSION

District courts have appellate jurisdiction over "final judgments, orders, and decrees" entered in bankruptcy court. 28 U.S.C. § 158(a). On appeal, a district court reviews the legal conclusions of a bankruptcy court "*de novo*, and its factual findings for clear error." *Wenegieme v. Macco*, No. 17–CV–1218, 2018 WL 334032, at *2 (E.D.N.Y. Jan. 9, 2018) (citing *In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000)). "A finding is 'clearly erroneous' when, on consideration of the record as a whole, the reviewing court 'is left with the definite and firm conviction that a mistake has been committed.'" *Bongiovanni v. Grubin*, No. 15-CV-2617, 2016 WL 4059349, at *3 (E.D.N.Y. July 28, 2016) (quoting *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 168 (2d Cir. 2001)). The district court, however, remains limited by the jurisdictional confines of Article III. *See Gonzalez v. Musso*, No. 08–CV–3026, 2008 WL 3194179, at *1 (E.D.N.Y. Aug. 6, 2008).

---

[5] Judge Craig denied the appellee's motion to vacate the loss mitigation order under Rule 60(b). (A087.)

[6] The appellant also argues that Judge Craig "had no basis to vacate the [loss mitigation order] under Rule 60(b)." (ECF No. 6 at 7.) However, Judge Craig did not vacate the order under Rule 60(b); she terminated the loss mitigation proceedings as moot. (A086–87.)

[7] Since the appellant did not include page numbers in any of her briefs, all referenced page numbers correspond to those generated by the Court's Electronic Court Filing system.

The fundamental problem with the appellant's claim is that it is moot. The doctrine of mootness is rooted in the "jurisdictional tenet that Federal courts are empowered to hear only live cases and controversies." *In re Delta Air Lines, Inc.*, 386 B.R. 518, 537 (Bankr. S.D.N.Y. 2008) (citation omitted); *see Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). A district court may only hear a case where a plaintiff "suffered, or [is] threatened with, an actual injury traceable to the defendant [that is] likely to be redressed by a favorable judicial decision." *In re Kurtzman*, 194 F.3d 54, 58 (2d Cir. 1999) (internal quotation marks and citation omitted). Where it is "impossible for the court to grant any effectual relief whatever to a prevailing party," a case is moot, *In re Boodrow*, 126 F.3d 43, 46 (2d Cir. 1997) (citations omitted), and "the federal courts lack subject matter jurisdiction over the action," *In re Kurtzman*, 194 F.3d at 58 (internal quotation marks and citation omitted).

Neither party has raised the issue of mootness on appeal, but I "examine the issue *sua sponte* when it emerges from the record." *Pashaian v. Eccelston Properties, Ltd.*, 88 F.3d 77, 82 (2d Cir. 1996) (citations omitted); Fed. R. Civ. P. 12(h)(3); *see Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 149 (2d Cir. 1999) ("[R]eexamination of a question regarding . . . jurisdiction is especially important whenever there is reason to believe that it may be lacking." (citations omitted)).

The subject property was sold at a foreclosure hearing, which the appellant did not disclose in her application to institute loss mitigation proceedings before Judge Craig. Thus, even if Judge Craig was mistaken in terminating those proceedings, they would have been pointless. The "Loss Mitigation Program is designed to function as a forum in individual bankruptcy cases for debtors and lenders to reach consensual resolution whenever a debtor's residential property is *at risk of foreclosure*." (A015) (emphasis added). There is no risk of

foreclosure here, because the property has been sold, and the appellee has no interest in the mortgage. Forcing the parties to engage in loss mitigation proceedings would not remedy the appellant's claim that the automatic stay should have taken effect.

At the October 23, 2018 status conference, appellant's counsel made clear that the appellant really wants to undo the foreclosure sale. Citing no authority, counsel maintained for the first time that he could "pull that property back into the bankruptcy court" if the Court found that an automatic stay should have attached. (Oct. 23, 2018 Status Conf. Tr. at 5:2–7.) The appellant did not seek this relief in her appeal. *Halpert Enterprises, Inc. v. Harrison*, No. 07–CV–1144, 2008 WL 4585466, at *3, n.1 (2d Cir. Oct. 15, 2008) (summary order); *see In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 137 (S.D.N.Y. 2008) (Arguments "raised for the first time at oral argument" are waived).

In any event, a district court sitting as an appellate court to bankruptcy court cannot undo the foreclosure sale of the property. *See, e.g., In re Abbott*, 447 F. App'x 232, 233 (2d Cir. 2011) ("[T]he foreclosure sale terminated Abbott's interest in her home, defeating the purpose of Abbott's appeal from the bankruptcy court's denial of her motion to sell her home.") (summary order); *Richmond v. P.B. No. 7, LLC*, No. 14–CV–5957, 2015 WL 805029, at *8 (E.D.N.Y. Feb. 25, 2015) (rejecting the appellant's argument that "a federal appellate court can unwind the sale, taking it out of the hands of a third party and restoring it to [the debtor]" (citations omitted)). Indeed, it is well established that a foreclosure sale of a disputed property moots the appeal of a bankruptcy court's order. *Wenegieme*, 2017 WL 1422629, at *3 ("'The law is clear that once a foreclosure sale has taken place, the appeal is moot.'" (quoting *In re Young*, 242 F.3d 369, 2000 WL 1737810, at *1 (2d Cir. 2000) (summary order)). The Court cannot fashion any form of

relief, and thus, has no jurisdiction over this appeal. *In re Abbott*, 447 F. App'x at 233–34 (citing *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)).

## CONCLUSION

Accordingly, the appeal is dismissed as moot and for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

**SO ORDERED.**

s/Ann M. Donnelly

Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
      December 7, 2018